# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ED DIAZ, | Civ. No. 2:12-07130 (WJM) |
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

### WILLIAM J. MARTINI, U.S.D.J.:

Plaintiff Ed Diaz, a survivor of the September 11, 2001 attack on the World Trade Center suffering from post-traumatic stress disorder, appeals an administrative law judge's denial of disability insurance benefits and supplemental security income benefits. Mr. Diaz argues, *inter alia*, that the administrative law judge improperly weighed various expert opinions and relied on vocational expert testimony that did not reflect the facts of Mr. Diaz's situation. The Commissioner does not challenge any of the arguments Diaz makes in his brief. Indeed, the Commissioner recognizes that the administrative law judge's decision "is not defensible," Commissioner's Br. at 1, ECF No. 19. The only disputed issue before this Court is whether alleged bias on the part of the administrative law judge requires this Court to remand the case to a new administrative law judge. The Court will **VACATE** and **REMAND** this case. The Court will **DENY** Mr. Diaz's request for reassignment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ed Diaz found himself on the 32nd floor of one of the Twin Towers on September 11th. Administrative Transcript ("Tr.") 55. Mr. Diaz managed to get out, but many of his friends did not. *Id.*

On June 26, 2007, consulting psychiatrist Dr. Nimer Iskandarani diagnosed Mr. Diaz with post-traumatic stress disorder ("PTSD"). *Id.* at 242. Dr. Iskandarani concluded that Mr. Diaz's "social and occupational competence" was "inadequate." *Id.* at 241.

Following a 2007 car accident, Mr. Diaz sought treatment from Jidong Sun, a doctor specializing in physical medicine and rehabilitation. Dr. Sun identified "significant functional limitations interfering with patient's working ability and his activities of daily living." *Id.* at 248. After MRIs indicated a bulging cervical disc and a

herniated lumbar disc, Dr. Sun indicated that Mr. Diaz should limit physical activities to a "tolerable limit." *Id.* at 248, 254. On March 24, 2009 orthopedic surgeon Dr. David Basch examined Mr. Diaz and diagnosed cervical, lumbar, and wrist strains with spinal disc disruption, bulge, and herniation, and bilateral median mononeuropathy. *Id.* at 287.

In 2007-2008, Mr. Diaz received psychiatric care from Dr. Claudio Dicovskiy. Dr. Dicovskiy diagnosed PTSD and concluded that Mr. Diaz's impulse control was "fair to poor." *Id.* at 275. In 2009, Mr. Diaz began a partial hospitalization program for mental health care at Harbor House, an entity affiliated with St. Joseph's Medical Center. *Id.* at 276. In October 2010, Dr. Marcia Ribalta, Mr. Diaz's psychiatrist at Harbor House, informed the Social Security Administration that Mr. Diaz could not meet competitive standards in the areas of "deal[ing] with normal work stress" and "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms." *Id.* at 376. In Dr. Ribalta's opinion, Mr. Diaz would have to miss about four days of work per month. *Id.* at 379. Also in October 2010, Dr. Ribalta informed the Social Security Administration that in her medical opinion, Mr. Diaz would be "unable to do any type of competitive employment." *Id.* at 464.

On October 27, 2010, administrative law judge Donna A. Krappa (the "ALJ") convened a hearing on Mr. Diaz's benefits application. Tr. at 38-81. To determine whether Mr. Diaz could perform jobs available in the national economy, the ALJ took testimony from a vocational expert. The vocational expert first considered a hypothetical person of Mr. Diaz's age, educational background and work history who could lift ten pounds frequently and 20 pounds occasionally, who could perform low stress work with three 15 minute breaks every day, and who could not work in close proximity to others. The vocational expert testified that the following jobs in the national economy were available to this person: eye drop assembler, scale operator, and carding machine operator. Tr. at 77. The ALJ also asked the vocational expert to consider another hypothetical person of Mr. Diaz's age, educational background, and work history. Unlike the first hypothetical person, this individual would have to miss four days of work per month. The vocational expert testified that this person could not find work in the competitive labor market. *Id.* at 78.

## II.    LEGAL STANDARDS

### A.    The Five-Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* § 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the

impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A ("Part A"). If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## B.    Standard of Review

For purposes of this appeal, the court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The ALJ's factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence supports the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

The substantial evidence standard is highly deferential. "If a limitation is medically supported but is also contradicted by other evidence, the ALJ can choose to credit portions of the existing evidence and disregard others." *Seabon v. Comm'r of Soc. Sec. Admin.*, No. 10-2268, 2011 WL 3425508, at *8 (D.N.J. Aug. 4, 2011). "The ALJ cannot, however, 'reject evidence for no reason or for the wrong reason.'" *Id.* (internal citation omitted).

In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider the entire record. *Reefer v. Barnhart,* 326 F.3d 376, 379 (3d Cir. 2003). "The court must give deference to the administrative findings and may not 'weigh the evidence or substitute its conclusions for those of the fact-finder.'" *Allen v. Comm'r of Social Sec.*, No. 10-2614, 2011 WL 1321985, at *7 (D.N.J. 2011) (internal citation omitted).

## III. THE ALJ'S DECISION

### A. Step One

At Step One, the ALJ determined that Mr. Diaz had not engaged in substantial gainful activity since November 1, 2004, the alleged onset date of Mr. Diaz's disability. Tr. at 21.

### B. Step Two

At Step Two, the ALJ determined that Mr. Diaz had the following severe impairments: mild bi-lateral carpal tunnel syndrome, a disorder of the back, asthma, substance abuse (in remission), and an affective disorder. *Id.*

### C. Step Three

At Step Three, the ALJ determined that Mr. Diaz did not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in Part A. *Id.* at 21-22. Specifically, the ALJ found that Mr. Diaz did not satisfy listing 12.04(C), which describes a

> medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Dr. Ribalta's concluded that Mr. Diaz satisfied listing 12.04(C). *Id.* at 378. In reaching her Step Three decision, the ALJ either ignored or rejected this conclusion.

**D.     Step Four**

At Step Four, the ALJ determined that Mr. Diaz could not perform his past work as a landscaper, computer technician, and general laborer. However, the ALJ found that Mr. Diaz had the RFC to perform work with specific exertional and postural restrictions. The ALJ found that Mr. Diaz could lift/carry 20 pounds occasionally and ten pounds frequently, that Mr. Diaz could sit for six hours in an eight hour work day, and that Mr. Diaz only occasionally use ramps or stairs. *Id.* at 23. With respect to the mental demands of a job, the ALJ found that Mr. Diaz could perform a low stress job with at least three breaks per day. *Id.*

In arriving at her RFC finding, the ALJ relied on Mr. Diaz's medical record. The ALJ noted that Dr. Basch identified chronic lumbar strain, that Dr. Dicovsky assessed a Global Assessment of Functioning ("GAF") score of 60 (indicating moderate symptoms), and that Dr. Iskandarani assessed a GAF score of 50-55 (indicating serious or moderate symptoms). *Id.* at 24-26. The ALJ did not say how much weight she was attributing to the opinions of Dr. Basch, Dr. Iskandarani, or Dr. Dicovsky.

In making her RFC finding, the ALJ also considered of the opinions of Dr. Sun and Dr. Ribalta. The ALJ recognized Dr. Sun's view that Mr. Diaz had "significant functional limitations." *Id.* at 25. However, the ALJ characterized Dr. Sun's view as "useless in assessing [Mr. Diaz's] residual functional capacity" because Dr. Sun did not "comment on the exact extent of [Mr. Diaz's] . . . injuries and disabilities." *Id.* The ALJ also put little stock in Dr. Ribalta's views, which the ALJ gave "little weight." *Id.* at 29. While recognizing that Dr. Ribalta gave Mr. Diaz a GAF score of 40-45, indicating serious symptoms, *id.* at 26, the ALJ nevertheless failed to credit Dr. Ribalta's opinion that Mr. Diaz could not work. The ALJ explained: "While [Dr. Ribalta's] progress notes suggest that [Mr. Diaz] has some limitations . . . as a result of his mental health issues, I do not find that they support a complete lack of ability to meet the mental demands of work." *Id.* at 26-27. The ALJ went on to quote Dr. Stephanie Barnes, a physician at Saint Barnes Hospital who treated Mr. Diaz after he reported to the emergency room on November 13, 2009. *Id.* at 27. Dr. Barnes described Mr. Diaz as "calm and cooperative," and she noted that Mr. Diaz reported improvements in his coping skills while in treatment with Dr. Ribalta. The ALJ failed to note that Mr. Diaz came to the emergency room partly because of suicidal ideations. *See id.* at 330-31.

After discussing Dr. Barnes's note, the ALJ made the following observation (the "Observation"):

> In evaluating the assessment that a doctor makes of a patient/claimant's limitations it is important to determine whether the assessed limitations in the forms checklist are supported by the findings reported by the doctor in his/her progress notes. When presented by a patient/claimant with a form requiring assessment of a patient/claimant's functioning, a doctor or psychologist may be tempted to overstate the severity of his/her patient's limitations out of sympathy for the claimant's financial circumstances or

his/her lack of insured medical treatment—both of which could be significantly improved were a patient/claimant were to be awarded disability benefits.

Furthermore, a doctor or psychologist may be tempted to overstate the severity of his/her patient's limitation as a sort of quid pro quo for the claimant's willingness to treat with the doctor and increase his/her income. Obviously, medical and mental health professionals, though highly educated and trained, are subject to many of the same biases and stressors as lay people/witnesses.

*Id.* at 27.

The ALJ proceeded to explain that Dr. Ribalta's views about Mr. Diaz's ability to work were apparently contradicted by a series of roughly 20 progress notes from Dr. Ribalta's practice. *Id.* at 27-29 (citing Tr. at 411-62). These notes almost never indicated that Mr. Diaz's limitations were severe. Most of them indicated that Mr. Diaz's mental status was "ok." *Id.* at 411-62.

### E.    Step Five

At Step Five, the ALJ relied on the vocational expert's testimony to conclude that the following jobs in the national economy were available to Mr. Diaz: eye drop assembler, scale operator, and carding machine operator. *Id.* at 30-31. Accordingly, the ALJ concluded that Mr. Diaz was not disabled.

## IV.    DISCUSSION

Mr. Diaz argues that the ALJ's decision was not supported by substantial evidence. Mr. Diaz also argues that his case should be reassigned following remand because the ALJ was biased. The Court will consider these arguments in turn.

### A.    The ALJ's Decision Was Not Supported By Substantial Evidence.

Mr. Diaz makes the following arguments for why the ALJ's decision was not supported by substantial evidence: First, at Step Four, the ALJ assigned incorrect weights to the medical opinions of Dr. Sun and Dr. Ribalta, and the ALJ failed to indicate how much weight she was assigning to the opinions of Dr. Basch, Dr. Dicovsky, and Dr. Iskandarani. Second, at Step Five, the ALJ relied on vocational expert testimony concerning an individual with an RFC different from Mr. Diaz. Third, at Step Three, the ALJ failed to consider relevant evidence when she decided that Mr. Diaz did not have the impairment identified in listing 12.04(C). Fourth, at Steps Two through Five, the ALJ did not properly consider Mr. Diaz's PTSD and neck injuries.

The Commissioner does not challenge Mr. Diaz's arguments. Indeed, he agrees that "this case is not defensible on the record before the Court." Commissioner's Br. at 1. The Commissioner goes on to explain: "[a] remand for further proceedings is warranted here because the ALJ's decision contained inconsistencies with regard to Plaintiff's residual functional capacity (RFC) as well as discrepancies between the hypothetical question posed to the vocational expert and the RFC found in the hearing decision from ALJ Krappa." *Id.* at 3. Accordingly, the Court will **VACATE** and **REMAND** this case.

On remand, the ALJ shall explicitly indicate how much weight she is attributing to the opinions of Dr. Basch, Dr. Dicovsky, and Dr. Iskandarani. *See Carroll v. Astrue*, No. 6-4869, 2008 WL 800576, at *6 (D.N.J. March 24, 2008) ("[The ALJ's] failure to explain whether he was accepting any of Dr. Willman's opinion and what weight he gave it was error."). The ALJ shall also reassess how much weight to give Dr. Sun's opinion. The ALJ said that Dr. Sun's views about Mr. Diaz were "useless" for RFC purposes because Dr. Sun did not "comment on the exact extent of [Mr. Diaz's] . . . injuries and disabilities." Tr. at 25. However, Dr. Sun recognized that Mr. Diaz had "significant functional limitations" and needed to restrict his activities to "tolerable limits" based on diagnostic test results. *Id.* at 248-49.

Also, the ALJ shall reassess how much weight to give Dr. Ribalta's opinion. In her decision, the ALJ gave "little weight" to Dr. Ribalta's opinion that Mr. Diaz could not work, in part because progress notes from Dr. Ribalta's clinic indicated that Mr. Diaz's mental status was "ok." Tr. at 411-62. Mr. Diaz sees no conflict between the progress notes and Dr. Ribalta's opinion. Mr. Diaz argues that the progress notes reflected how he "presented in a highly supportive five day per week, six hour per day therapeutic psychiatric treatment environment," and not how he would fare in a work environment. Pl.'s Br. at 23. Mr. Diaz is correct: a patient can appear one way in a doctor's office, and he can present in an entirely different way in the outside world. The Social Security regulations recognize as much. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(C)(3) ("We must exercise great care in reaching conclusions about your ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on your ability to complete tasks in other settings that are less demanding, highly structured, or more supportive."). On remand, the ALJ shall reassess how much weight to give Dr. Ribalta's opinion.

After reassessing how much weight to give the various medical opinions, the ALJ shall reassess Step Five. In arriving at her Step Five conclusion, the ALJ chose not to rely on the vocational expert's testimony that someone who would miss four days of work per month could not hold down a job. The ALJ chose not to rely on this testimony because she rejected Dr. Ribalta's opinion that Mr. Diaz would miss four days of work per month. After the ALJ reconsiders her RFC determination, paying specific attention to the number of days Mr. Diaz will be able to work and the extent to which PTSD will impact Mr. Diaz's ability to work, the ALJ shall reassess her Step Five finding. *See Kanga v. Bowen*, 823 F.2d 775, 777-78 (3d Cir. 1987) ("The regulations defining residual

functional capacity direct the Secretary to determine a claimant's capacity for work on a "regular and continuing basis.").

Next, in reconsidering whether Mr. Diaz satisfies listing 12.04(C), the ALJ shall specifically address Dr. Ribalta's view that Mr. Diaz satisfied the criteria set forth in listing 12.04(C). *See* Tr. at 378.

Finally, the Court turns to Mr. Diaz's argument that the ALJ failed to consider Mr. Diaz's PTSD and neck problems at Steps Two through Five. At Step Two, the ALJ found that Mr. Diaz's affective disorder constituted a severe impairment. Mr. Diaz maintains that the ALJ should have added PTSD—which he maintains is not an affective disorder—to the list of severe impairments. But given that the ALJ considered whether Mr. Diaz's PTSD affected his RFC, this omission appears to be harmless. (However, to the extent the ALJ relied on vocational testimony about a hypothetical person who was not suffering from PTSD, this omission was material.) As for Mr. Diaz's neck problems, the ALJ did not find that they constituted a severe impairment. Instead, the ALJ found that Mr. Diaz's "disorder of the back" constituted a severe impairment. It is unclear to the Court whether the neck problems Mr. Diaz references differ from the back problems addressed by the ALJ. On remand, when the ALJ reevaluates the findings of Dr. Sun and Dr. Basch, she shall make explicit what she means by "disorder of the back," and explain whether "disorder of the back" includes neck problems, as well.

### B. The Court Will Not Reassign This Case To A New Administrative Law Judge.

The ALJ made an observation that when it comes to benefits applications, doctors sometimes let sympathy cloud their medical judgment. Mr. Diaz believes the Observation reveals bias on the part of the ALJ. Accordingly, Mr. Diaz requests an order reassigning the case to a new administrative judge on remand. The Court will deny this request.

Citing *Grant v. Commissioner*, 111 F. Supp. 2d 556, 558 (M.D. Pa. 2000), Mr. Diaz maintains that reassignment is proper where "there is proof that the ALJ is unable to fulfill the duty to develop the facts and decide impartially." Pl.'s Reply at 3, ECF No. 21. Put differently, "when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004). "Factors for consideration in this determination include:

> (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.

*Id.*

While the ALJ's Observation did not belong in her opinion, it does not "give[] rise to serious concerns about the fundamental fairness of the disability review process." *Id.* Here, there is no evidence that sympathy interfered with Dr. Ribalta's judgment. If the ALJ thought otherwise, and if she based her decision on her unsupported belief, the ALJ erred as a matter of law. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). But the Court cannot infer that the ALJ will apply the wrong legal standard on remand. Nor can the Court find that the ALJ is clearly biased towards Mr. Diaz. And nor can the Court find that the ALJ refused to consider evidence based on hostility towards Mr. Diaz. Indeed, the ALJ provided a lengthy discussion of her reasons for attributing "little weight" to Dr. Ribalta's decision. Tr. at 27-29. As part of this discussion, the ALJ referenced Dr. Ribalta's report to the Social Security Administration and roughly 20 notes from Dr. Ribalta's clinic. *Id.* While the ALJ might not have given the proper weight to Dr. Ribalta's findings, the ALJ did not simply ignore the record. Accordingly, Mr. Diaz's request for reassignment to a new administrative law judge is **DENIED**.

## V. CONCLUSION

For the aforementioned reasons, the Court will **VACATE** and **REMAND** this matter. The Court will **DENY** Mr. Diaz's request for reassignment.

____/s/ William J. Martini_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 23, 2013**